UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                  MEMORANDUM & ORDER

    v.                                         04-CR-559 (NGG)

KEVIN PETE LEVY,

            Defendant.
----------------------------------------------------------X
GARAUFIS, United States District Judge.

On March 22, 2005, defendant Kevin Pete Levy ("Levy") filed a series of pre-trial motions in advance of trial. A number of these motions were withdrawn by Levy or disposed of by stipulation with the government prior to oral argument on June 29, 2005. Accordingly, the only defense motions remaining for decision by this court are: (1) Levy's motion to sever Count Three of the indictment from this trial; (2) his motion to suppress the photo array identifications made by government witnesses; and (3) the motion to suppress recordings of phone calls made by Levy during his pre-trial detention at the MDC-Brooklyn facility. For the reasons that follow below, each of these motions is denied.

First, Levy's motion to sever Count Three of the indictment (Unlawful Alien in Possession of Ammunition) is denied. Levy argues that he will be unfairly prejudiced if the government is allowed to introduce evidence of Levy's status as an illegal alien to the jury considering the weapons-related charges against him. (Def. Br. at 26.) The Second Circuit has squarely held, however, that joinder of an alien-in-possession count with other charges is proper

1

"where the same evidence will support both of the joined counts." United States v. Tubol, 191 F.3d 88, 95 (2d Cir. 1999). See also United States v. Parra, 2 F.3d 1058 (10th Cir. 1993) (rejecting defendant's argument that the district court had abused its discretion in denying his request to sever an alien-in-possession count from drug trafficking charges); United States v. Lomeli, No. 94 Cr. 173-1, 1995 WL 248039 (N.D. Ill., April 26, 1995) ("Because a separate trial on [the alien-in-possession count] would have involved the presentation of much of the same evidence offered in support of defendant's conviction on the other counts in the indictment, severance would have been inappropriate."). Here, Levy is charged in Count Three with having possessed the very bullets which were fired during the shooting incident charged in Counts One and Two. A separate trial of the alien-in-possession charge therefore would require the government to rehash much of its evidence concerning the events that transpired on the evening of the shooting. Accordingly, joinder in a single trial of the charges contained in all three counts of the indictment is appropriate, and Levy's motion to sever is denied.

Levy's motion to suppress the photo array identifications made by government witnesses is denied. Levy argues that these identifications should be suppressed because "the pretrial showing of the photographs was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Def. Br. at 27.) Levy further asserts that no witness who participated in these "tainted" pretrial identifications should be permitted to make an in-court identification of the defendant. (Id.) However, Levy does not explain why he views the pretrial identification procedure as having been unduly suggestive.

It is well settled that the use of a photo array is not inherently suggestive, and its mere use will not prevent admission of the pre-trial identification or an in-court identification by the

witness. See, e.g., Simmons v. United States, 390 U.S. 377, 384 (1968). Instead, a specific determination must be made in each case as to whether the particular pre-trial identification procedure employed was unnecessarily suggestive or prejudicial. Id. In this Circuit, courts consider whether a pre-trial identification was unduly suggestive using the following analysis:

> The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility. If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures.

United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990).

Additionally, a defendant moving to suppress a pre-trial photo array identification must make a threshold showing that the procedures that led to the defendant's identification were unduly suggestive. United States v. Leonardi, 623 F.2d 746, 755 (2d Cir. 1980).

Here, the defendant has not presented the court with any theory as to why the photo array identifications should be considered impermissibly suggestive. The government has submitted a copy of the contested photo array as Exhibit A to its brief in opposition to Levy's motions. All six photographs depict African-American men of approximately the same age, roughly similar complexion (to the extent it can be discerned from the black-and-white copies of the photographs provided by the government) and roughly similar hairstyles. The subjects' height and weight are not apparent from the photographs. And while the defendant is the only photo subject without any facial hair, none of the men in the photographs have particularly distinctive facial hair.

In short, since the photo array presented to witnesses is not suggestive in its own right,

3

since the procedures described in the government's memorandum of law dated May 31, 2005 repeatedly have been approved by the courts of this Circuit, and since defense counsel has not presented any rationale whatsoever in support of the defendant's allegation that the identification was unduly suggestive, the defendant's motion to suppress is denied.

Finally, Levy's motion to preclude the government from offering into evidence any audio recordings of phone calls that the defendant made in while in federal custody on the basis that neither the "consent" nor the "ordinary course" exceptions to Title III are applicable in this case is likewise without merit.

It is firmly established that Title III does not bar the recording of prison conversations where the recordings are made in the ordinary course of business. 18 U.S.C. § 2510(5)(a) excludes from Title III's protections "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties." The Second Circuit has interpreted this section to mean that Bureau of Prisons officials may record inmate phone conversations as long as the recording is "motivated by legitimate . . . law enforcement motives and routine," and the prisoner is on notice that his calls may be recorded. United States v. Footman, 300 F.3d 111, 122-23 (2d Cir. 2002). Here, the calls made from MDC-Brooklyn were recorded pursuant to an established BOP policy governed by 28 C.F.R. § 540.102, as set forth in BOP Program Statement "Telephone Regulations for Prisoners". See http://www.bop.gov/policy/progstat/5264_007.pdf, at 16, lasted visited Sept. 8, 2005. The policy requires that an inmate sign an explicit acknowledgment that inmate phone conversations may be monitored or recorded; Levy's signed acknowledgment is attached as Exhibit D to the government's responding brief. Further, it is

clear both from the government's submission and from this court's prior experience that phone calls made from MDC-Brooklyn routinely are monitored and/or recorded. Accordingly, irrespective of whether the consent exception of Title III applies in the instant case, the telephone recordings of the defendants' calls made from MDC-Brooklyn fall within the "ordinary course" exception of Title III, and therefore will not be suppressed.

SO ORDERED.

Dated: September 9, 2005                                /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                                    Nicholas G. Garaufis
                                                            United States District Judge