# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 04-CR-559 (S-1) (JFB)

---

UNITED STATES OF AMERICA,

versus

KEVIN PETE LEVY,

Defendant.

---

MEMORANDUM AND ORDER
March 20, 2006

---

JOSEPH F. BIANCO, District Judge:

Defendant Kevin Pete Levy has been indicted for assault with a dangerous weapon in order to gain entrance to, maintain and increase his position in an enterprise engaged in racketeering activity, for using and carrying a firearm in relation to a crime of violence, and for being an unlawful alien in possession of ammunition. The defendant moves to dismiss Counts One and Two of the Superseding Indictment, 04-559 (S-1) (JFB) (the "Indictment"), as facially defective. The parties also have made several evidentiary *in limine* motions: (1) the defendant moves to preclude the introduction of certain telephone recordings of conversations that the defendant had with other individuals while in jail; (2) the government moves to admit evidence relating to the defendant's arrest in Georgia in 2003; and (3) the government moves to admit evidence regarding the interactions between a cooperating witness and the defendant in Jamaica in the mid-1990s.

For the reasons that follow, the defendant's motion to dismiss Counts One and Two of the Indictment is denied. The government's motions *in limine* are granted in part and denied in part, and the defendant's motion *in limine* is granted in part and denied in part.

I. BACKGROUND

The defendant is charged in three counts in the Indictment. The charges arise from the alleged shooting of an individual in mid-August 2002 in connection with the activities of an alleged criminal enterprise involved in, among other things, automobile fraud. The defendant is charged in Count One with committing an assault with a dangerous weapon for the purpose of gaining entrance to, maintaining, and increasing his position in this criminal enterprise, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2. Count Two charges the defendant with using, carrying, and discharging a firearm in connection with the assault charged in Count One, in violation of Title 18, United States

Code, Sections 924(c)(1)(A)(iii) and 2. The defendant is charged in Count Three with being an unlawful alien in possession of ammunition at the time of the alleged assault, in violation of Title 18, United States Code, Section 922(g)(5)(A).

The Indictment alleges that the enterprise engaged in racketeering activity to generate money for its members and associates through the commission of crimes, including mail fraud, health care fraud, assault and threats of assault. (Indictment ¶¶ 1-4.) The Indictment also alleges that the leader of the enterprise was co-defendant Christopher Hemmings and that the defendant was a member of the enterprise.[1] (Indictment ¶¶ 2-3.) The Indictment further alleges that the members and associates used the following means and methods: (1) "[s]taging and fabricating automobile accidents ('staged accidents'), causing automobile accidents by intentionally crashing one automobile into an automobile driven by an unsuspecting third party ('caused accidents') and responding to the scenes of legitimate automobile accidents ('legitimate accidents')"; (2) "[s]eeking unnecessary treatment at medical clinics and directing individuals involved in the staged accidents, caused accidents and legitimate accidents to seek and receive unnecessary treatment at medical clinics"; and (3) "[c]ommitting, attempting to commit, and threatening to commit acts of violence." (Indictment ¶ 5.)

The government has further proffered the following evidence that it intends to prove with respect to the defendant's involvement in the enterprise and the alleged assault charged in the Indictment:

Beginning with his entrance into the crew in approximately late 2001, the defendant functioned primarily as an "enforcer." He accompanied "runners" to accident scenes where, as the runners spoke with victims, he guarded against competition by rival crew members. The defendant was performing that role when he shot his victim, Lester Matheson, on the night of August 14, 2002. Upon their arrival at an accident scene that evening, the defendant and Hemmings observed Matheson, an accident fraud competitor, already soliciting medical clinic referrals. This created tension, which was exacerbated by Hemmings' belief that Matheson had participated in robbing him approximately one year earlier. When Hemmings and the defendant encountered Matheson, the defendant volunteered to kill Matheson and Hemmings approved. The defendant then shot Matheson several times at close range, including the chest, stopping only once his gun jammed. The defendant "laid low" for a period of weeks before resuming his activity with the crew.

(*Gov't Letter to the Court*, dated March 9, 2006, at 2.) The government also has proffered that it intends to show that, in addition to the defendant, the Hemmings crew consisted of several other individuals, including: Leroy Francis (a/k/a "Tunkey"), Anthony Richards (a/k/a "Gugga"), Tyrone Peters (a/k/a "Showerman"), and Damian Blackwood (a/k/a "Ratty"). (*Id.*)

## II. DISCUSSION

The Court first addresses defendant's motion to dismiss the indictment, and then addresses the *in limine* motions in turn.

---

[1] Co-defendant Hemmings pleaded guilty on June 6, 2005 to Counts One and Two of the Indictment and is awaiting sentencing.

2

### A. Defendant's Motion to Dismiss Counts One and Two of the Indictment

Defendant Levy has moved pursuant to Rule 12(3)(B) and Rule 7 of the Federal Rules of Criminal Procedure to dismiss Counts One (Assault with a Dangerous Weapon) and Two (Using and Carrying a Firearm) of the Indictment.[2] Specifically, the defendant argues that Count One fails to allege two predicate acts of racketeering pursuant to 18 U.S.C. § 1961 and, therefore, seeks to have the Court dismiss that count, as well as Count Two (which defendant argues is wholly dependent on Count One). (*See* Def.'s Mem. at 3-7.) For the reasons set forth below, the motion is denied.

Rule (7)(c)(1) of the Federal Rules of Criminal Procedure states that "[t]he indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It is well-settled that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 116 (1974); *accord United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992). Thus, the Second Circuit has "consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (*quoting United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)); *accord United States v. Covino*, 837 F.2d 65, 69 (2d Cir. 1988).

This standard applies to challenges to RICO and Section 1959 indictments. *See United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983) *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); *see also United States v. Booth*, No. 99 Cr. 378 (LBS), 1999 WL 1192317, at *5 (S.D.N.Y. Dec. 14, 1999) ("It is sufficient . . . for a § 1959 indictment to track the statutory language and to identify the approximate time and place of the alleged offense."); *United States v. Giampa*, No. S 92 Cr. 437 (PKL), 1992 WL 322028, at *4 (S.D.N.Y. Oct. 29, 1992) (same).

Count One is more than sufficient to satisfy this Second Circuit standard. Count One charges that the defendant committed an assault with a dangerous weapon in order to gain entrance to, maintain and increase his position in an enterprise engaged in racketeering activity, in violation of Title 18, United States Code, Section 1959. The Indictment also alleges, among other things, that the enterprise engaged in health care fraud, mail fraud, assault, and threats of assault, and that the defendant and co-defendant Hemmings were part of that enterprise. (Indictment ¶¶ 2-4.) In addition, the Indictment sets forth a description of the means and methods of the enterprise, including staging and fabricating automobile accidents and seeking unnecessary medical treatment in connection with staged, caused, and legitimate accidents. (*Id.* ¶ 5.) The Indictment further provides the date of the charged shooting and the government has produced the name of the alleged victim in discovery. Therefore, the Court finds that Count One is legally sufficient because it tracks the statutory language, as well as provides the defendant with sufficient detail to inform him of the charge against which he must defend and to enable him to plead

---

[2] At oral argument, the Court granted the defendant's request to amend the motion orally to clarify that the defendant is moving, not only under Rule 12(3)(B), but also under Rule 7.

double jeopardy in a future prosecution based on the same alleged assault. The Court concludes, for the same reasons, that Count Two – which charges the use, carry and discharge of a firearm during and in relation to the assault charged in Count One – is legally sufficient.

Defendant's central argument, that the Indictment is defective because Count One does not allege two predicate acts, is unavailing. The two predicate requirement arises from the definition of a "pattern of racketeering" which is a term that is contained in Section 1962, not Section 1959. Although the government must prove the existence of an "enterprise engaged in racketeering activity" under Section 1959, it need not prove that there was a "pattern" of racketeering activity as required in a RICO charge under Section 1962. *See Booth*, 1999 WL 1192317, at \*5 (collecting cases which recognize that "Section 1959 does not specify a particular number of racketeering acts that must be committed for there to be a finding that an enterprise was engaged in racketeering activity"); *see also United States v. Bracy*, 67 F.3d 1421, 1430 (9th Cir. 1995) ("neither the plain language of § 1959 nor the elements . . . require[] the government to prove that the defendants engaged in a pattern of racketeering activity") (citation omitted); *United States v. Fiel*, 35 F.3d 997, 1005 (4th Cir. 1994) ("Section 1959 contains no required 'pattern' of racketeering activity.").

Moreover, regardless of the precise quantum of proof sufficient to satisfy the racketeering requirement under Section 1959, the Indictment survives a motion to dismiss if it tracks the statutory language and alleges an "enterprise engaged in racketeering activity." As the court noted in *Booth*, the defendant "is correct when he states that the government must prove beyond a reasonable doubt that the alleged enterprise was 'engaged in racketeering activity,' but it does not follow from that fact that such proof must be contained in the Indictment itself." *Id.* at \*6.

The Court also notes that defendant's contention that "Count One defines the charged racketeering acts at [sic] Health Care Fraud only," is incorrect. Count One incorporates five introductory paragraphs and specifically alleges that the enterprise was engaged in racketeering activity in the form of mail fraud under Section 1341:

> The Enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts indictable under Title 18, United States Code, Section 1341.

(Indictment ¶ 6.) Section 1959 specifically adopts Section 1961's definition of "racketeering activity" and there is no question that mail fraud constitutes a proper racketeering act under the statutory definition of "racketeering activity." *See* 18 U.S.C. § 1961(1). Therefore, not only does the Indictment allege an "enterprise engaged in racketeering activity," but it also specifies the type of racketeering activity, required under Section 1961, that the government intends to prove at trial. The fact that the Indictment, in addition to alleging mail fraud, also alleges other criminal activity by the enterprise which is not contained in the Section 1961 definition, such as health care fraud, does not make the Indictment defective. Moreover, although the defendant complains that the Indictment does not contain a date on which the mail fraud was alleged to have occurred or the elements of mail fraud, such details regarding the underlying racketeering activity need not be alleged in a Section 1959 indictment in order to satisfy Rule 7 and

4

survive a motion to dismiss.[3] *See Hamling*, 418 U.S. at 117 ("It is generally sufficient that the indictment set forth the offense in the words of the statute itself."); *Costello* v. *United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits.").

Accordingly, the defendant's motion to dismiss Counts One and Two is denied.

B. Defendant's *In Limine* Motion to Exclude Certain Recorded Conversations

The defendant moves, *in limine*, to preclude the government from introducing eighteen recorded telephone conversations of the defendant while in federal custody. The defendant argues that the recordings are not relevant to the instant case. In addition, the defendant argues that, even if portions of the conversations are relevant, the tapes contain irrelevant and prejudicial remarks and, therefore, should be excluded under Rule 403 of the Federal Rules of Evidence.[4] (*See Mem. of Law in Support of Def.'s Pre-Trial Mots.*, dated March 3, 2006.) The government argues that the conversations are relevant and admissible in their entirety because they demonstrate the defendant's participation with the fraud crew charged in the Indictment and demonstrate consciousness of guilt. For the reasons set forth below, the defendant's motion to preclude is granted as to the tapes corresponding to the draft transcripts marked as government exhibits 102, 106-107, 111-118, and denied as to the remaining tapes. The Court's decision is based on a careful review of the draft transcripts, marked as government exhibits 101-118, submitted to the Court by the defendant as exhibits to his motion.

The defendant moves, in the alternative, to have the tapes and transcripts redacted to address relevancy and prejudice concerns. At oral argument, the government stated that it had not decided which particular tapes it would play at trial. As discussed below, the government is instructed to make redactions to any remaining tapes and transcripts (Tapes 101, 103-105, 108-110) that it wishes to introduce at trial, consistent with the Court's guidance below and at oral argument. The Court will allow defense counsel to renew its request for additional redactions to those tapes (or make any other evidentiary objections to those tapes, such as audibility) after the government makes its redactions.

Pursuant to Rule 402 of the Federal Rules of Evidence, all relevant evidence is admissible unless specifically excluded. Fed.R.Evid. 402. "Relevance evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

---

[3] With respect to defendant's desire to have details regarding the underlying racketeering activity, the Court notes that the government represented to the Court at oral argument that the defendant has received documentary evidence in Rule 16 discovery in connection with particular staged accident frauds which the government alleges are part of the underlying racketeering activity of the enterprise alleged in the Indictment.

[4] Prior to filing the motion, counsel for the defendant suggested that the defendant was only seeking to preclude certain conversations. (*See Transcript of February 23, 2006 Proceeding*, at 14.) ("So there's layers upon layers of objections to some of the conversations, and on some of these conversations, I think that the government is absolutely correct, they will come in . . . . But some of them definitely have some things in them that just don't belong in front of a jury.") The motion, however, now seeks to exclude all the tapes in their entirety.

more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *see United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime."). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Therefore, the Court must perform a Rule 403 balancing test prior to the admission of relevant evidence.

The Court finds that the tape recordings are relevant to the instant case in several respects. First, the recordings are highly probative as to the existence of the enterprise and the defendant's position with that enterprise, both of which the government is required to prove in the instant case in connection with Count One. More specifically, at numerous points in the recordings, the defendant is talking with, or about, one or more individuals whom the government alleges are part of the enterprise. For example, the defendant has two conversations with the alleged enterprise leader, Christopher Hemmings, and conversations with "Tunkie," who is also alleged to be involved in the enterprise. These and other conversations are replete with references to enterprise members by their aliases and inquiries about their current activities. Moreover, there are references in the conversations to "Danny's," which the government alleges is the name of the restaurant where the Hemmings crew met almost nightly to monitor police scanners. There are also references to a trip to Georgia involving the defendant and other enterprise members, which is probative for reasons set forth *infra*. (*See Section II(C).*) Thus, these conversations directly relate to the defendant's involvement in the charged enterprise, which will be the subject of testimony by cooperating witnesses whom the government has indicated it will call.

Although the defendant argues that he is not going to contest that he knows some of these other individuals, the context of these recordings and the defendant's admissions in these recordings go beyond simply knowing the individuals, but rather suggest a closeness from which the jury could infer the existence of a criminal enterprise and the defendant's participation in that enterprise, neither of which the defendant has stated he intends to concede. *See, e.g., United States v. Herrera-Medina*, 853 F.2d 564, 566 (7th Cir. 1988) (upholding admission of recorded phone conversations used "to show that [defendant] was an intimate of the drug kingpin, that he was familiar with the drug trade and that the kingpin trusted him"). In addition to repeated inquiries by the defendant regarding the status of other alleged crew members, he also had a conversation on one recording with co-defendant Hemmings, who is the alleged leader of the enterprise and an anticipated government witness, in which Hemmings describes plans to lend the defendant $3,000 for legal costs. That alleged conversation is also probative of the defendant's participation in the enterprise. *See, e.g., United States v. Simmons*, 923 F.2d 934, 949 (2d Cir. 1991) ("We have previously indicated that payment of attorneys' fees by one individual on behalf of other suspected members of a criminal enterprise may imply facts about a prior or present relationship between the benefactor and his beneficiaries." (quotation and citations omitted)).

6

Second, there are portions of these recordings which are probative on the issue of consciousness of guilt. *See United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) ("Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt.") For example, the defendant makes numerous disparaging and sometimes threatening comments on the tapes about another enterprise member, Dainan Blackwood (a/k/a "Ratty"), whom the defendant believes may be cooperating with the government. Similarly, at various times in the recordings when discussing matters relating to fellow enterprise members, the defendant cautions others that the prison calls are being monitored. These statements are probative as to the defendant's state of mind and can be offered by the government as proof of consciousness of guilt.[5]

Therefore, the Court finds that the tape recordings contain highly probative evidence as to the crimes charged in the Indictment. The defendant argues, however, that even if these recordings are relevant, they should be precluded in their entirety under Rule 403 as unfairly prejudicial. In particular, defendant argues that the tapes contain, among other things, references to the defendant's incarceration and pending deportation, sexual conversations with his common law wife, negative references about his attorney, and a discussion about his common law wife's pregnancy and the possibility of an abortion. Defendant also argues that many of the tapes are cumulative.

The Court finds, with respect to Tapes 102, 106-107, 111-118, the relevant evidence on those tapes is cumulative of the statements contained on the other tapes. Many of these tapes are between the defendant and his common law wife, or other non-enterprise members, and contain many of the above references to which the defendant has objected as irrelevant or unfairly prejudicial. Even apart from those objections, however, the recordings are needlessly cumulative. More specifically, although the government points to references in these conversations by the defendant about a number of alleged enterprise members, similar references are contained on other tapes with the alleged enterprise members themselves (such as Hemmings and Tunkie), which the Court, as set forth below, is allowing the government to introduce into evidence with appropriate redactions. For example, defendant's admissions in a conversations with "Terry"

---

[5] The defendant argues that these statements, and the recordings in general, are irrelevant because they were made by the defendant more than one year after the shooting alleged in the indictment. The Court finds that argument unpersuasive. Admissions by a defendant that relate to his association with other enterprise members, and to consciousness of guilt, can be probative, as in the instant case, even if they occur after the charged conduct. *See United States v. Disanto*, 86 F.3d 1238, 1252 (1st Cir. 1996) ("Even assuming *arguendo*, that proximity must be considered in determining relevance, we nonetheless find that even though the conversations occur two years after the attempt and conspiracy, they are closely intertwined with the charged offenses and provide significant contextual material for the jury." (internal quotation and citation omitted)); *United States v. Perkins*, 926 F.2d 1271, 1279-80 (1st Cir. 1991) (finding no error in admission of post-conspiracy statements made to a government informant where court found statements were an admission corroborating trial testimony and reflected complicity and consciousness of guilt); *United States v. Rittweger*, 258 F. Supp. 2d 345, 347 n.2 (S.D.N.Y. 2003) ("Moreover,

[defendant's] argument that the tapes are not relevant because they were recorded after the conspiracy was allegedly formed is without merit. The tapes are clearly probative as to the existence of the alleged conspiracy and the co-conspirators' respective roles in the alleged conspiracy.").

7

that defendant knows his co-defendant Hemmings are cumulative, and of limited value, where defendant has two calls with Hemmings himself.

The government also argues that these tapes should be admitted because they contain a false alibi by the defendant and a false denial to his common law wife that he knows co-defendant Hemmings, both of which the government claims demonstrate consciousness of guilt. It is unclear to the Court from the transcripts themselves that the defendant is necessarily trying to concoct a false alibi. Moreover, defense counsel stated, at oral argument, that the alibi discussion may have involved confusion about the date of the alleged crime based on conversations counsel had with the defendant and that his refusal to discuss anything about co-defendant Hemmings on the telephone may have been based on instructions from counsel. Under these circumstances, given the limited context of the conversation and the possible implication of discussions with his defense attorney, any probative value of the exchanges on these particular tapes is substantially outweighed by potential jury confusion and unfair prejudice. Therefore, the Court precludes the introduction of Tapes 102, 106-107, 111-118, pursuant to Rule 403.

With respect to the remaining seven recordings (Tapes 101, 103-05, and 108-110), the Court finds that, with appropriate redactions, the probative value of such recordings for the reasons set forth above substantially outweighs the danger of unfair prejudice. Many of these tapes are directly between the defendant and enterprise members, including co-defendant Hemmings, and the other recordings contain similarly probative evidence regarding defendant's involvement in the enterprise and consciousness of guilt. The fact that the jury will know that the defendant is in jail is not a sufficient basis to exclude this highly probative evidence under Rule 403. In any event, these types of concerns about potential unfair prejudice can be addressed by the Court in a limiting instruction.

Accordingly, after careful consideration of the evidence under Rule 403, the Court grants the defendant's motion to preclude as to Tapes 102, 106-107, 111-118, and denies the motion to preclude as to the remaining tapes (Tapes 101, 103-05, 108-110). With respect to these remaining tapes, the defendant's motion to redact is granted to the following extent: the Court directs the government to determine which of the remaining seven tapes, or portions thereof, it is going to seek to introduce at the trial and then redact those tapes to eliminate irrelevant or potentially prejudicial exchanges unrelated to the charges in the instant case, including (but not limited to) sexual references, references to the Georgia conviction or how much time the defendant has remaining in jail, and the prison operator introduction at the commencement of certain calls.[6] After the government completes those redactions, the Court will allow the defendant to make any additional objections or requests for redactions to the remaining portions of the tapes.[7]

---

[6] The Court understands that certain irrelevant portions to which the defendant objects may be so intertwined with relevant portions to make redaction impracticable without destroying the meaning of the conversation. The Court will address such situations should they arise upon completion of the government choosing the tapes it wishes to offer at trial and making redactions consistent with the Court's direction above.

[7] In its motion, defendant requested an audibility hearing regarding the tapes. However, at oral argument, counsel for the defendant agreed to hold that request in abeyance until the Court ruled on the Rule 403 objections and the government selects which tapes it would like to introduce at

8

### C. Government's *In Limine* Motion to Admit Evidence About Defendant's Activity in Georgia

The government moves, *in limine*, to introduce evidence that the defendant traveled to Georgia in April 2003 with two enterprise members to obtain a driver's license and purchase guns in connection with the enterprise and, during that trip, was arrested. The government argues that this evidence is admissible as direct proof of the defendant's involvement in the charged criminal enterprise because (1) the defendant was seeking to obtain the license so that he could begin serving as a "runner" for the criminal enterprise, and (2) that the defendant and his fellow enterprise members needed guns to arm themselves as a result of potential violence between enterprise members and rival groups in the accident fraud business. To prove this conduct, the government seeks to present testimony of the arresting officer regarding the arrest of the defendant and two other enterprise members in Georgia, as well as the seizure of the license and guns. In addition, the government intends to call one of the two enterprise members who traveled with the defendant to Georgia and who will describe how the trip to Georgia to obtain the license and guns related to the enterprise's activity. (*See generally Gov't Letters to the Court,* dated Aug. 31, 2005, Oct. 4, 2005, and March 9, 2006 (submission of additional proffer of facts at Court's request).)

Defendant argues that the evidence should be excluded under Rules 404(b) and 403, primarily because: (1) there is no conspiracy charged in the Indictment, so the evidence cannot be offered to prove the existence of a conspiracy as permitted under Second Circuit law; (2) the alleged incident occurred after the charged shooting in this case and, therefore, is not probative; and (3) it is unfairly prejudicial. (*See Counsel for Def. Letter to the Court*, dated Sept. 19, 2005.) For the reasons set forth below, the government's motion *in limine* is granted.

As the Second Circuit has noted, "[i]t is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003). In fact, under those circumstances, the evidence of uncharged crimes is not considered "other crimes" evidence and, thus, is not subject to analysis under Rule 404(b).[8] *See Baez*, 349 F.3d at 93-94; *see also United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (rejecting defendant's 404(b) argument because "the government did not offer this as evidence of 'other' acts within the meaning of Rule 404(b) but rather offered it as proof of the existence of the RICO enterprise alleged in the indictment which used such acts of violence in furtherance of its narcotics conspiracy").

The Court finds that the evidence relating to the defendant's arrest in Georgia is direct proof of the existence of the racketeering enterprise charged in the Indictment and the defendant's position within that enterprise. The proffered evidence regarding the trip to Georgia, and the attempt to obtain a license and guns, relates directly to the defendant's participation in the enterprise. In particular, the government intends to offer proof that: (1) the defendant needed a driver's license so that

---

trial. Therefore, defendant can renew any audibility/translation objections once the government determines which tapes it intends to use at trial and, if necessary, submit recordings to the Court for its review.

[8] Even if the Court performed this analysis under Rule 404(b), it would be admissible for the legitimate purposes articulated below.

9

he could act as a "runner" for the enterprise at accident scenes; (2) that in approximately early 2002, months prior to the charged incident, the defendant traveled with a co-conspirator to Atlanta to obtain that license from a friend of co-defendant Hemmings, but was told that the paperwork did not go through and he would need to return to Georgia to complete the transaction; and (3) in April 2003, the defendant returned to Georgia with two enterprise members to obtain the license and at least one gun for his enterprise activity, but the three were arrested in Georgia. According to the government, it intends to call one of the two enterprise members who accompanied the defendant to Georgia and the government believes that the witness will explain that the defendant sought an illegal license specifically so that he could increase his role in the enterprise, an element which the government is required to prove in connection with the charged crime.[9]

Defendant argues that the evidence should not be admitted because the defendant is not charged in a conspiracy. That argument, however, overlooks the fact that the defendant is charged with committing an assault in aid of a racketeering enterprise, of which he is alleged to have been a member. As part of that charge, the government must prove, among other things, that an enterprise engaged in racketeering activity, existed, and that the defendant committed the charged assault in an effort to gain entry to, maintain or increase his position in the enterprise. The alleged Georgia conduct constitutes direct evidence of those elements and is properly admitted for that purpose in this Section 1959 prosecution. *See Baez*, 349 F.3d at 94 ("The evidence admitted by the District Court was relevant to the central issues of the trial: the existence of a racketeering enterprise and the conspiracy."); *United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) (holding that evidence of murders by a defendant's co-conspirators was relevant to "demonstrate the existence of the RICO enterprise"). The fact that there is not a separate conspiracy count does not diminish the high probative value of this evidence as it relates to the substantive Section 1959 count.

The defendant also argues that the uncharged conduct should not be admitted because it occurred almost a year after the assault charged in the Indictment. The Court finds this argument unpersuasive. It is well-settled that "otherwise relevant evidence is not rendered inadmissible because it relates to events falling outside the time frame alleged in the indictment." *United States v. Diaz*, 878 F.2d 608, 615 n.2 (2d Cir. 1989); *see also United States v. Arroyo-Angulo*, 580 F.2d 1137, 1149 (2d Cir. 1978) (other crimes evidence, if relevant, is admissible "even if

---

[9] Even if the evidence was not admissible as direct evidence of the charged crime, the Court finds that it would be admissible because it is "inextricably intertwined" with other admissible evidence in the case, and is necessary to complete the story of the alleged assault charged in the Indictment. *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989); *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (evidence of uncharged crimes is not subject to Rule 404(b) "'if it arose out of the same transaction or series of transactions as the charged offense, if it is intextricably intertwined with the evidence regarding the charged offense, or if it necessary to complete the story of the crime on trial'"). Moreover, the evidence would also be admissible to corroborate the anticipated testimony of the government's cooperating witnesses. *See United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) ("The defense at trial was largely that the government informants . . . were lying. The testimony . . . properly admitted to provide corroboration for the testimony of those informants."); *United States v. Oskowitz*, 294 F. Supp. 2d 379, 382 (E.D.N.Y. 2003) ("Corroboration is also an acceptable purpose to admit prior act evidence.").

the acts occurred after the crime charged in the indictment"); *United States v. Cavallaro*, 553 F.2d 300, 305 (2d Cir. 1977) ("It is well-established in this Circuit that evidence of subsequent similar acts, including other crimes, is admissible"). The potential probative value of acts subsequent to the crime charged is highlighted in prosecutions, as in the instant case, under Section 1959. As noted above, the government is required to prove under Section 1959 that the defendant committed the charged assault in an effort to gain entrance to, maintain or increase his position in the enterprise. Therefore, evidence of the defendant's involvement in the enterprise *after* the charged shooting, including any alleged increased role in the enterprise, would be highly probative evidence as to the defendant's alleged motivation for the shooting. In other words, such proof goes directly to elements of the crime that the government is required to prove under Section 1959.

The instant case is closely analogous to facts in *United States v. Tse*, 135 F.3d 200 (1st Cir. 1998), in which the First Circuit held that evidence of uncharged conduct, which was subsequent to the charged crime, was properly admitted in a Section 1959 prosecution to prove the existence of the enterprise and that the defendant committed the charged crimes to maintain his position in the enterprise. More specifically, in *Tse*, the defendant was the alleged leader of a crime organization in Boston called Ping On, and was charged with two counts under Section 1959 in relation to the attempted murders of rival gang members. *See id.* at 203-04. Tse appealed his conviction, alleging, *inter alia*, that the district court erred by admitting evidence of the defendant's efforts, subsequent to the charged attempted murders, to smuggle aliens into the United States to aid the organization. In rejecting that argument and finding the evidence admissible, the First Circuit explained the importance of such proof in a Section 1959 case:

> To prove Tse guilty of violating § 1959(a)(5) the government was required to prove that Ping On was an enterprise and that it engaged in racketeering activity as defined by 18 U.S.C. § 1961(1). Section 1961 defines racketeering activity as acts indictable under provisions of the United States code such as robbery or extortion interfering with commerce or running an illegal gambling business. *See* 18 U.S.C. § 1961(1)(B). Furthermore, the government was required to prove that Tse committed the crimes to maintain his position in the enterprise. 18 U.S.C. § 1959(a). These evidentiary burdens made evidence of Tse's prior and subsequent criminal activity probative.

*Id.* at 208*; see also United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998) (in Section 1959 prosecution, "[w]hile it was not necessary to prove that appellant was himself a part of the enterprise engaged in racketeering activity, it was certainly relevant to produce evidence suggesting that he and [the enterprise leader] worked together in the enterprise engaged in racketeering activity as alleged in the indictment").

As in *Tse*, in the instant case, the government is seeking to introduce the evidence of the subsequent Georgia criminal activity to satisfy the requisite elements of the Section 1959 count and, therefore, it is highly probative. Moreover, the Court has performed the Rule 403 balancing and, after careful consideration of the evidence under the circumstances of this case, finds that the danger of unfair prejudice does not substantially outweigh the high probative value. In a prosecution where the defendant is charged with the commission of a violent act

11

using a firearm, the danger of unfair prejudice from the admission of this evidence for this legitimate purpose is minimal. *See, e.g., United States v. Livoti,* 196 F.3d 322, 326 (2d Cir. 1999) (finding no abuse of discretion in admitting evidence of uncharged act where "did not involve conduct more inflammatory than the charged crime"). In any event, any potential for unfair prejudice can be addressed by a limiting instruction to the jury that will explain the purpose for which this evidence is being offered. Accordingly, the government's motion *in limine* to introduce evidence regarding the Georgia trip and arrest is granted.[10]

### D. Government's *In Limine* Motion to Admit Testimony About Defendant's Prior Interaction with Cooperating Witness

The government moves, *in limine*, to admit evidence through the testimony of a cooperating witness ("CW") relating to the CW's interaction with the defendant in Jamaica in the mid-1990s relating to the storage of a gun. (*See Gov't Letter to the Court*, dated March 3, 2006.) The government seeks to allow the CW to testify that the defendant, while in his early teens, stored and returned a weapon in Jamaica belonging to the CW after the weapon had been used in a robbery. According to the CW, as a result of that interaction, the CW asked the defendant several years later, in approximately 2001, to participate in the racketeering enterprise alleged in the Indictment.

In particular, the government proffers that the CW would testify that, while in Jamaica in early 1994 or 1995, he lent a gun to a friend, "Clayton," because Clayton needed to use it to rob a "security officer." The government anticipates that the CW would further testify that Clayton subsequently reported to the CW that the robbery was a success and that he had given the CW's gun to the defendant for safekeeping after the robbery. According to the CW, he then retrieved the gun from the defendant. In response to questions at oral argument, the government confirmed that there was no discussion between the CW and the defendant upon the defendant's retrieval of the gun from the defendant that would indicate whether the defendant knew anything at all about Clayton's robbery. There is also no indication that Clayton had any involvement in the criminal enterprise alleged in the Indictment.

The government argues that the proffered testimony is relevant to show how the relationship of trust developed between the CW and the defendant and to explain how the defendant, years later, became part of the alleged criminal enterprise in the United States that is charged in the Indictment. The defendant raises a number of objections to the introduction of this evidence including: (1) that the statements made by Clayton to the CW are testimonial hearsay; (2) that this alleged act in the mid-1990s is remote in time and place in relation to the charged offense; and (3) that the evidence will have an "overwhelming prejudicial effect." *See*

---

[10] At oral argument, the government suggested that it may also seek to introduce the conviction and/or guilty plea allocution arising from the Georgia arrest for the same purpose. Subsequent to the defendant's arrest, he pleaded guilty to making a false statement in connection with the purchase of the guns obtained in Georgia, in violation of Title 18, United States Code, Section 924(a)(1)(A). Such proof would obviously raise additional Rule 403 issues. The cooperator and law enforcement testimony is sufficient given the purpose for which for the government seeks to introduce this evidence and, given the additional Rule 403 concerns raised by the conviction and guilty plea, the Court finds that evidence of the conviction and/or plea allocution is precluded under Rule 403.

*Counsel for Def. Letter to the Court*, dated March 11, 2006, at 2. During oral argument, the defendant also objected to this evidence based on the defendant's age at the time he stored the gun. For the reasons set forth below, the government's motion *in limine* to admit this evidence is denied.

The Second Circuit has adopted an "inclusive approach" to Rule 404(b) such that evidence of other acts may be admitted for "any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice." *United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998) (internal quotation and citation omitted). The Second Circuit has further explained that "[o]ne legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (*citing United States v. Lasanta*, 978 F.2d 1300, 1307-08 (2d Cir. 1992)). In addition, "[s]uch proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust." *Id.*; *see also United States v. Williams*, 205 F.3d 23, 33 (2d Cir.), *cert. denied*, 531 U.S. 885 (2000) (prior criminal conduct relevant "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed") (*quoting United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)). Although there is no conspiracy charged in this case, the need for the government to establish how this illegal relationship of trust began applies with equal force where the government is required to prove that the defendant committed the charged act in aid of a racketeering enterprise. *See, e.g., United States v. Mason*, S17 96 Cr. 126 (JFK), 2000 WL 680361 (S.D.N.Y. May 24, 2000) (in a RICO case, "the [g]overnment may offer evidence of such acts [under 404(b)] to illustrate the background of the enterprise and to explain how the relationship and mutual trust between its members evolved"(*citing United States v. Diaz*, 176 F.3d 52, 79-80 (2d Cir. 1999))) *aff'd* 51 Fed. Appx. 355 (2d Cir. 2002). In the instant case, the Court finds that the government is seeking to introduce the evidence for this type of legitimate purpose – that is, to attempt to establish how the relationship of trust between the defendant and the CW developed and to explain how the defendant became a member of the enterprise charged in the Indictment.

The inquiry, however, does not stop there. Upon finding a proper purpose, the Court must next determine whether "the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice." *Pitre*, 960 F.2d at 1119; *see also Pipola*, 83 F.3d at 566. Here, for primarily three reasons, the Court concludes that the probative value of this prior act evidence to establish "mutual trust" between the CW and the defendant is extremely limited.

First, there is little direct interaction, and no discussion, between the CW and the defendant with respect to the gun. The government is not seeking to establish that there was a prior criminal partnership in Jamaica between the defendant and the CW. This significant fact distinguishes this case from the cases cited by the government in support of its motion. In those cases, the cooperating witness participated *directly* with the defendant in prior criminal activity and, thus, the testimony was highly probative to establish how an illegal relationship later formed. *See United States v. Rosa*, 11 F.3d

315, 334 (2d Cir. 1993); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Kalaydjian*, 784 F.2d 53, 56 n.3 (2d Cir. 1986); *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004); *United States v. Chen Xiang*, No. S1 02 Cr. 271 (RCC), 2003 WL 21180400, at *3 (S.D.N.Y. May 20, 2003). *See also United States v. Dolney*, No. 04 Cr. 159 (NGG), 2005 WL 2129169, at *2-3 (E.D.N.Y. Sept. 1, 2005). In each of these cases, the cooperator testified about prior criminal acts committed with the defendant. Here, however, the government seeks to establish a prior relationship between the CW and the defendant based on a favor by the defendant for a third party, Clayton. As noted above, the CW did not give the gun directly to the defendant to store. Further, the CW had no discussions with the defendant upon retrieving the gun that would indicate whether the defendant knew about the robbery or why he had been asked by Clayton to store the gun. In other words, there is no indication that the CW could provide testimony, either from his discussions with Clayton, or more importantly from his discussions with the defendant, as to what Clayton told the defendant when he asked him to store the gun. The absence of evidence about the defendant's knowledge of why he was storing the gun minimizes the probative value of this testimony.

Second, the age of the defendant significantly decreases the probative value of this testimony. Here, the defendant was a young teenager, approximately thirteen or fourteen years old according to the defendant's counsel. The fact that a thirteen or fourteen year-old stored the CW's gun as a favor for Clayton is not significantly probative to establish a relationship of trust between CW and the defendant such that the CW would invite the defendant to join the criminal enterprise at some later date.

Third, the events in Jamaica allegedly took place over five years before the CW invited the defendant to join the criminal enterprise. Although this time lapse, in and of itself, does not affect the probative value of the testimony, when it is combined with the age of the defendant at the time, and the fact that the CW and the defendant did not discuss any details involving the storage of the gun, the probative value of such testimony is further decreased.

In sum, the proffered factual circumstances in this case do not give rise to a strong basis for the establishment of mutual trust between the CW and the defendant. Therefore, although the government argues it is only offering this evidence to establish the state of mind of the CW in 2001 to explain why he recruited the defendant to be part of the enterprise (and thereby it is not testimonial in nature), the Court finds the probative value of this evidence on the issue of mutual trust, or as background to the charged criminal enterprise, is extremely limited.

Moreover, under Rule 403, the Court finds that the minimal probative value is substantially outweighed by the danger of unfair prejudice that could result to the defendant from this testimony. Testimony about what Clayton told the CW about the robbery, and the potential jury speculation as to what Clayton may or may not have told the defendant about the robbery, runs the risk of being unfairly prejudicial. Accordingly, pursuant to Rule 403, the Court denies the government's motion *in limine* to admit this testimony regarding the CW's conversations with Clayton and interactions with the defendant about the gun in the mid-1990s. This ruling does not, of course, limit the government from eliciting testimony from the CW about the fact that he had previously met the defendant in Jamaica, without making reference to the gun incident.

14

III. Conclusion

For the foregoing reasons, defendant's motion to dismiss Counts One and Two of the Indictment is denied.

Defendant's motion *in limine* to exclude certain tape recordings is granted in part and denied in part. Specifically, the Court grants the defendant's motion to preclude Tapes 102, 106-107, 111-118, and denies the motion to preclude the remaining tapes (Tapes 101, 103-105, 108-110). With respect to these remaining tapes, the defendant's motion to redact is granted to the following extent: The Court directs the government to determine which of the remaining seven tapes, or portions thereof, it is going to seek to introduce at the trial and then redact those tapes to eliminate irrelevant or potentially prejudicial exchanges unrelated to the charges in the instant case, including (but not limited to) sexual references, references to the Georgia conviction or how much time the defendant has remaining in jail, and the prison operator introduction at the commencement of certain calls. After the government completes those redactions, the Court will allow the defendant to make any additional objections or requests for redactions to the remaining portions of the tapes.

The government's motion *in limine* to admit evidence about the defendant's Georgia arrest, and the circumstances surrounding that arrest, is granted. The government is precluded, however, from introducing the guilty plea or judgment of conviction from the defendant's arrest in Georgia.

The government's motion *in limine* to admit evidence about defendant's interaction with the CW in Jamaica relating to a gun is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 20, 2006
Brooklyn, NY

\* \* \*

The attorneys for the government are Adam Abensohn, Esq., and Monica Ryan, Esq., Assistant United States Attorneys, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, One Pierrepont Plaza, Brooklyn, New York 11201. The attorney for the defendant is Sally J.M. Butler, Esq., 42-40 Bell Boulevard, Suite 302, Bayside, New York 11361