# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

№ 04-CR-559 (S-1) (JFB)

————————————

### UNITED STATES OF AMERICA,

versus

### KEVIN PETE LEVY,

Defendant.

————————————

MEMORANDUM AND ORDER
April 3, 2006

————————————

JOSEPH F. BIANCO, District Judge:

The government requests that the Court correct the Superceding Indictment, Cr. No. 04-559 (S-1) (JFB) ("the Indictment"), during trial. Because the Court finds that the requested change is ministerial and is otherwise authorized for the reasons stated below, the Court approves the request and, accordingly, corrects the Indictment.

## I. BACKGROUND

The defendant, Kevin Pete Levy, is charged with, *inter alia*, being an unlawful alien in possession of ammunition in August 2002, in violation of Title 18, United States Code, Section 922(g)(5)(A). (Indict. ¶¶ 10-

11.)[1] With respect to this charge, paragraph 11 specifically states:

> On or about and between August 14, 2002, and August 15, 2002, both dates being approximate and inclusive, within the Eastern District of New York, the defendant KEVIN PETE LEVY, also known as "Kevin Augustus Robinson" and "Juvenile," being an alien who was illegally and unlawfully in the United States, did knowingly and intentionally possess in and affecting commerce ammunition,

———————————

[1] For a more complete rendition of the facts of this case, including all of the charges alleged in the Indictment, refer to this Court's prior opinion, *United States v. Levy*, 2006 WL 721515 (E.D.N.Y. Mar. 20, 2006).

to wit: five Winchester & Wesson .32 caliber cartridge cases, and did knowingly and intentionally receive the ammunition, which had been shipped and transported in interstate commerce.

(Indict. ¶ 11). Before the grand jury, the government asked the case agent whether or not the shell casings that were collected from the scene of the alleged assault were manufactured by "Winchester and Wesson" (Gov Ex. 3500-SM-1.) The case agent answered in the affirmative, and further testified that they were manufactured in Illinois.

During trial, the jury heard the testimony of Agent Ismael Hernandez, a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), who is certified as an interstate-nexus expert. (Tr. 187-97, Mar. 28, 2006.) Agent Hernandez testified that the shell casings recovered from the scene of the alleged assault charged in Count One had to have traveled in interstate commerce, as they were manufactured by Winchester in East Alton, Illinois. (Tr. 192.) He testified that the ammunition was specifically called a "Winchester-Western" cartridge. (Tr. 193.) He further testified that to best of his knowledge, there is no such thing as a "Winchester and Wesson" cartridge. (Tr. 193.)

By letter dated March 28, 2006, the government requested that the Indictment be corrected to change the reference from "Winchester & Wesson" to the correct ammunition name, "Winchester-Western." The defendant argues that the error was more than a typographical error. In particular, the defendant asserts that the grand jury heard testimony including the wrong name, and the

defendant has been prejudiced because he relied on the error.[2]

## II. DISCUSSION

There is no absolute requirement that a grand jury amend an indictment. Rather, "the district court or the prosecutor may make 'ministerial change[s]' to the indictment, such as to correct a misnomer or typographical errors." *United States v. Dhinsa*, 243 F.3d 635, 667 (2d Cir. 2001) (citing *United States v. McGrath*, 558 F.2d 1102, 1105 (2d Cir. 1977) (collecting cases)); *see also United States v. Miller*, 116 F.3d 641, 669-70 (2d Cir. 1997) ("[T]he correction of merely technical errors, such as typographical or clerical mistakes, is permissible where it does not alter the essential substance of the charging terms."); *United States v. Johnson*, 741 F.2d 1338, 1341 (11th Cir. 1984) (finding that "amendments that are merely a matter of form are freely permitted" and "[m]atters of form include amendments to correct a misnomer") (internal quotations and citations omitted). Further, "[a]n indictment may be altered without resubmission to the grand jury as long as the alteration makes no material change and there is no prejudice to the defendant." *Dhinsa*, 243 F.3d at 667 (quoting *United States v. Lorefice*, 192 F.3d 647, 653 (7th Cir. 1999)).

Amendments to the indictment may occur at different stages during trial. *See, e.g., McGrath*, 558 F.2d at 1104 (approving amended complaint, that was reached by convening grand jury to issue superceding indictment following opening statements); *see also Dhinsa*, 243 F.3d at 669 (noting that

---

[2] *See* Counsel for Defendant's Letter to the Court, dated March 29, 2006; *see also* Counsel for Defendant's Letter to the Court, dated April 2, 2006.

amendment of the indictment at various stages of trial is not *per se* invalid); *see also United States v. Cirami*, 510 F.2d 69, 71 (2d Cir. 1975) (approving the reading of an amended complaint to the jury which was changed on motion by the government at the close of its case).

As a threshold matter, this Court finds the phrase at issue–"Winchester and Wesson"–was merely a misnomer. The first part of the name of the actual ammunition heard by the jury at trial–namely, Winchester–and the type of ammunition charged in the Indictment is identical. Next, it is not a stretch to imagine that the second word "Western" could be easily confused with "Wesson," particularly because "Wesson" is a brand-name commonly associated with firearms and ammunition. It is unlikely that the government intended to allege that the ammunition was called "Winchester & Wesson," where no such type of ammunition exists.

Further, changing the amendment would not prejudice the defendant. The Indictment fully apprised him of the nature of the "crime charged and the need to prepare a defense,"[3] as it provided him with adequate notice of the time, specified in a narrow date range, in which the alleged illicit possession took place. When viewed in conjunction with the charge in Count One, committing an assault with a dangerous weapon for the purpose of gaining entrance to, maintaining, and increasing his position in a criminal enterprise, 18 U.S.C. § 1959(a)(3), which involved the same dates, it is plain that the government is alleging that the possession of ammunition was in connection with the charged assault. The specificity was sufficient to "enable[] another court to determine the charge for double jeopardy purposes."[4]

Moreover, the defendant cannot claim prejudice because, even if the Indictment remained as is, it would not support a Fed. R. Crim. P. Rule 29 motion for a judgment of acquittal based on an argument that the difference between the type of ammunition charged and that which the trial evidence demonstrated constituted a fatal variance. A slight variance in allegations and proof offered at trial is not fatal where a distinction is unimportant for purposes of the charged statute. *See United States v. Brozyna*, 571 F.2d 742, 745 (2d Cir. 1978). The type of weapon or ammunition possessed is not *essential* to a conviction for a Section 922(g) charge, and thus cannot form the basis of a fatal variance. *See United States v. Guidry*, 406 F.3d 314, 322 (5th Cir. 2005).[5]

---

[3] *McGrath*, 558 F.2d at 1105.

[4] *Id.*

[5] At oral argument, the defendant argued that another Fifth Circuit case was persuasive, *United States v. Adams,* 778 F.2d 1117, 1119 (5th Cir. 1985), but this Court finds that case inapposite. In *Adams*, the defendant was charged with making a false statement in the purchase of a firearm under 18 U.S.C. § 922(a)(6). While the indictment alleged that the license falsely misrepresented the name of the defendant, the proof at trial also included evidence that the defendant additionally misrepresented his address, by claiming that he was a Mississippi resident. *See id.* at 1121. The Fifth Circuit reversed the defendant's conviction, finding that, although the defendant could have been properly convicted on a more broadly worded indictment, the change in proof established an impermissible constructive amendment because the manner in which a driver's license is false "modified an essential element charged." *Id.* at 1124 (internal quotation omitted). This Court finds the Fifth Circuit's later opinion in *Guidry* more on point, which held that the type of firearm alleged is not an essential

3

The defendant argues that there would be prejudice because his defense strategy would have been altered–specifically, he asserts that his defense would have been to challenge the interstate commerce element by noting that "Winchester & Wesson" ammunition does not exist, and therefore could not have been shipped in interstate commerce. The Court rejects his argument, as it does not find that this would be a meaningful defense. A different scenario may have arisen if the government had alleged a different type of ammunition that existed and that was manufactured within New York state–in that instance, the defendant could have reasonably relied on a defense that the interstate commerce element did not exist to the detriment of preparing other defenses. Here, the fact that "Winchester & Wesson" does not exist at all makes relying on such a defense unreasonable. The government alleges the existence of some type of ammunition, and the defense cannot reasonably rely solely upon the argument that it was not manufactured by anybody. The defendant knew that shell casings had been recovered at the scene of the alleged assault and those casings, with the manufacturer's markings, were available for inspection prior to trial. Relying on such a technical defect to the exclusion of other defenses would be plainly unreasonable, similar to relying upon a strategy that the wrong victim name was cited in the Indictment, where the charged criminal offense is patently obvious from the face of the Indictment.[6] The change will not increase

the burden of his defense, and this Court rejects the defendant's invitation to "return to the arid formalism of common law pleading." *McGrath*, 558 F.2d at 1105.

Other courts, in closely analogous situations, have reached the same conclusion as this Court and allowed corrections to an indictment. For example, in *United States v. Skelley*, 501 F.2d 447, 453 (7th Cir. 1974), the Seventh Circuit upheld the district court's decision to allow the Government to strike incorrect fictitious serial numbers of counterfeit bills alleged in the indictment. Specifically, the Seventh Circuit stated:

> While the exceptions do not completely engulf the rule, we are not prepared to make a fetish of the prohibition against amendments of an indictment by holding that it is reversible error to interlineate fictitious serial numbers which are inaccurate solely because of the transposition of two digits in a ten digit string, which could have been omitted entirely from the indictment with no consequence, which need not be proved even if alleged, which the jury could have been instructed to ignore, which might have been

---

element of the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), which is closely analogous to the alien in possession of ammunition prohibition found in subsection (5) of the same statute. *See* 406 F.3d at 322.

[6] *See, e.g., United States v. Robles-Vertiz*, 155 F.3d 725, 729 (5th Cir. 1998) (rejecting

defendant's argument that he was prejudiced by the fact that the indictment named the wrong victim as part of an alien smuggling charge; although the government had to prove the victim's status as an alien, the alien's name was not an essential element of the offense and did not change the government's theory or conduct that it alleged in the indictment); *see also Perez v. Greiner*, 2003 WL 22137013, at *2 (S.D.N.Y. Sept. 15, 2003) (approving the trial court's amendment of the victim's name from "Juan Martinez" to "Ivan Martinez" because it did not alter an essential element of the offense).

corrected as typographical errors . . .

*Id.* at 453*; see also United States v. Johnson*, 741 F.2d at 1338 (finding that amendment of the indictment during the course of trial to replace the words "Federal Deposit Insurance Corporation" with the words "Federal Savings and Loan Insurance Corporation" was proper); *United States v. Young Bros., Inc.*, 728 F.2d 682, 693 (5th Cir. 1984) (holding that the trial court properly amended a misnomer in indictment mid-trial by changing "Young Brothers, Inc.," which did not exist, to "Young Brothers, Inc. Contractors," which was the correct name); *United States v. Kegler,* 724 F.2d 190, 195 (D.C. Cir. 1984) (finding that amendment of the indictment in a forged check case by substituting name "Andrea" for "Angela" as payee was proper); *United States v. Bush,* 659 F.2d 163, 165-67 (D.C. Cir. 1981) (holding that amendment of the indictment during trial to correct form number alleged in the indictment was permissible).

This analysis also has been applied by courts specifically in allowing amendments to indictments in firearms cases where there has been a typographical error or misnomer. *See United States v. Powers*, 572 F.2d 146, 152 (8th Cir. 1978) (finding that the trial court did not err by permitting the government to amend indictment one week prior to trial to correct erroneous description of firearm as "30-30 caliber revolver" to read "30-30 caliber rifle" because amendment "is not one of substance"); *United States v. Neff*, 525 F.2d 361, 363 (8th Cir. 1975) (holding that the trial court's amendment of the serial number of a weapon alleged in the indictment was permissible because it was a correction of a typographical error going to form, not substance). The Court finds these cases persuasive.

Although the defendant argues that the proposed correction in this case improperly encroaches on the grand jury because the misnomer was contained in the grand jury testimony, as well as the actual Indictment, the Court disagrees. The fact that a misnomer was contained not only in the Indictment, but in the grand jury testimony itself, does not transform an otherwise innocuous error into a Fifth Amendment violation. In the instant case, the grand jury heard testimony that the five .32 caliber shell casings, which were recovered on the night of August 14 and 15, 2002 and which form the substance of Count Three, were manufactured in Illinois – all of which is identical to the proof offered at trial. The only difference is that at trial the jury heard the casings are really called "Winchester-Western," rather than "Winchester and Wesson" (which is what the grand jury heard). The correction of that misnomer in the Indictment does not, in any way, change the substance of the offense for which the defendant was indicted or otherwise encroach on the province of the grand jury. Given these circumstances, the Court refuses to elevate form over substance and, thus, will allow the correction.[7]

As a final note, the fact that the proposed change comes towards the end of the government's case does not compel us to reject the application, despite the Second Circuit's decision in *Dhinsa*. In *Dhinsa,* the district court allowed the government to amend the indictment near the end of the trial

---

[7] *See Kegler*, 724 F.2d at 195 ("Correcting the name by changing three letters did not change the nature of the crime charged or charge a different offense from that alleged by the grand jury. It did not prejudice appellant's substantial rights. . . . We accordingly uphold the validity of the indictment as amended, typed and presented to the trial jury.")

to substitute federal kidnaping charges under 18 U.S.C. § 1201(a)(1), in place of kidnaping charges originally brought under the Violent Crime in Aid of Racketeering statute (VICAR), 18 U.S.C. § 1959(a)(1), (5). *See* 243 F.3d at 664. The Second Circuit distinguished *McGrath* and disallowed the court-ordered amendment of an indictment. The Second Circuit noted that the *McGrath* decision relied not only upon the grounds that the change was "ministerial" and the change caused the defendant no prejudice, but also the *timing* of the amendment.[8] The Circuit noted that it was a limited holding based on the "highly unusual circumstances" because based on the late timing of the amendment, there was no way to "speculate whether [defendant] would have chosen a different trial strategy had he been aware that the government intended to charge him under the federal kidnaping statute rather than the VICAR statute." *Id.* Specifically, the Circuit noted that the fact that the amendment took place after the testimony of the government's witnesses deprived the defendant of an ability to cross-examine them as it related to the interstate commerce nature of the kidnaping, an element essential to the federal kidnaping statute, but not VICAR. *Id.* The instant case is plainly distinguishable because the Court finds, as discussed *supra*, that the defendant's trial strategy could not have been affected in a meaningful way, even if the proper name for the ammunition was included in the Indictment at the beginning of trial.[9] Further, the defendant did, in fact, have an opportunity to cross-examine the government's expert with respect to the interstate commerce element. Consequently, the change would not increase the burden on Levy's defense, as was noted in *Dhinsa*. *See id.*[10]

### III. CONCLUSION

For the foregoing reasons, the Court finds that correcting the misnomer relating to the type of ammunition in Count Three is ministerial, and such an alteration would cause no prejudice to the defendant. Retaining the language could only serve to unnecessarily confuse the jury. Accordingly, the government's request to correct Count Three is GRANTED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 3, 2006
Brooklyn, NY

_____

[8] *Dhinsa,* 243 F.3d at 668 ("The *timing* of the amendment was also critical in our decision. Specifically, because the amendment was made after both sides made their opening statements but before any witnesses were called, we held that 'none of [the defendant's] rights [were] affected by the change, and the burden of his defense were not increased.").

[9] The issue is simple enough and the timing of the amendment is such that the defendant still has opportunity to produce evidence that the interstate commerce element was not satisfied, if that is even possible (by producing evidence that "Winchester-Western" ammunition is also manufactured in New York, for example).

[10] It should also be noted that *Dhinsa* is further distinguishable because the case also rejected the government's claims that the amendment was ministerial and harmless. *See id.* at 669-70. As discussed *supra*, this Court finds that the alteration in the instant case would be both ministerial and harmless.

\* \* \*

The attorneys for the government are Adam Abensohn, Esq., Assistant United States Attorney, Monica Ryan, Esq., Assistant United States Attorney, and Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, One Pierrepont Plaza, Brooklyn, New York 11201. The attorney for the defendant is Sally J.M. Butler, Esq., 42-40 Bell Boulevard, Suite 302, Bayside, New York 11361.